**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| v. | ) ) | Case No. 1:21-cr-138 |
| AARON MOSTOFSKY, | ) ) | **Judge James E. Boasberg** |
| Defendant. | ) ) ) | |

**DEFENDANT MOSTOFSKY'S MOTION FOR A BILL OF PARTICULARS**

Defendant Mostofsky, through his counsel, files this motion for a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal procedure, for the following reasons.

Mostofsky was indicted over four months ago. This case concerns a ballistic vest he found at the Capitol on January 6 and brought back to Brooklyn. He was charged with theft of government property for that action. He understands the nature of that charge. That count was reduced to a misdemeanor in a superseding indictment after the government determined that the value of the vest was not $1,905, as originally alleged, but actually in the range of $200-$300. The vest was returned to the government.

However, to this day, Mostofsky does not know why he is charged with felony offenses under 18 U.S.C. § 231(a)(3) and § 111(a)(1) in Counts 1 and 3, respectively. Tracking the statutory language, those counts charge that Mostofsky "forcibly assault[ed], resist[ed], oppose[d], imped[ed], intimidate[d], and interfere[d] with" a law enforcement officer with "the intent to commit another felony" (Count 3, § 111(a)(1)) and "obstruct[ed], impede[d], and interfere[d] with" a law enforcement officer during a civil disorder that obstructed a "federally protected function" (Count 1, § 231(a)(3)). But the superseding indictment does not provide any

1

explanation as to how or when Mostofsky allegedly violated those laws. There is additional vagueness. The majority of federal circuits require the government to prove an underlying assault for any of the § 111(a)(1) actus reus verbs. The superseding indictment does not indicate whether the government relies on an assault theory or something short of that. Nor does it indicate whether Mostofsky's alleged "act to obstruct, impede, and interfere" with a law enforcement officer (§ 231(a)(3)) is an assault, or merely some act of protest which might constitute protected expression. The "federally protected function" element of § 231(a)(3) requires that a civil disorder adversely affect the function of a "department, agency or instrumentality of the United States." The superseding indictment does not indicate the department, agency or instrumentality of the United States on which Count 1 is based. Mostofsky requested that the government provide answers to these questions to prepare his defense and avoid surprise at trial. The government declined to provide them.

The Court should order the government to file a simple bill of particulars to clarify these issues so that the indictment provides fair notice to Mostofsky of the charges he faces and so that he may avoid double jeopardy.

**I.      Section 111(a)(1), § 231(a)(3), and § 1512(c)(2) offenses**

**A.      Elements of a § 111(a)(1) offense**

Section 111 provides:

Whoever—

(1)      forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . .

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned nor more than 8 years, or both.

18 U.S.C. § 111(a)(1).

Multiple circuits have faulted Section 111 for several forms of vagueness.  In *United States v. Chapman*, the Ninth Circuit described them:

> Section 111(a) is inartfully drafted, leaving two major ambiguities. First, it distinguishes between misdemeanor and felony conduct by use of the term "simple assault," which is not defined in the statute or in any other federal statute. Second, § 111(a)(1) appears to prohibit six different types of actions, only one of which is "assault," but then it draws the line between misdemeanors and felonies solely by referencing the crime of assault. Therefore, it is unclear whether the statute prohibits acts of resistance, opposition, impediment, intimidation, or interference that do not also involve an underlying assault.

528 F.3d 1215, 1219 (9th Cir. 2008).

The court of appeals noted that various circuits have resolved these ambiguities in slightly different ways, but that under all interpretations there is "no room for a conviction that does not involve at least some form of assault." 528 F.3d at 1219.  That is because "for the statute to be constitutional [under vagueness doctrine], it must draw a [clear] line between that conduct which constitutes a misdemeanor offense and that which constitutes a felony." *Id*. at 1220.  In *United States v. Chestaro*, the Second Circuit concluded that § 111(a) criminalized three distinct categories of conduct: (1) assaults that do not involve physical contact (punishable by up to one year), (2) assaults that do involve physical contact (punishable up to eight years), and (3) assaults that involve a deadly or dangerous weapon or bodily injury (punishable up to twenty years).  197 F.3d 600, 608 (2d Cir. 1999).  The Third Circuit adopted the *Chestaro* formula.  *United States v. McCulligan*, 256 F.3d 97, 102 (3d Cir. 2001).  Meanwhile, the Tenth Circuit has held that proof of actual physical contact, while sufficient, is not necessary to sustain a conviction of non-simple assault under § 111(a), but rather, an assault coupled with the presence of physical contact or a similar aggravating factor, such as the intent to commit murder

3

or a serious felony, is not simple. *United States v. Hathaway*, 318 F.3d 1001, 1007 (10th Cir. 2003).

"Therefore," concluded the Ninth Circuit in *Chapman*, "under each of [the circuit's] approaches, while a defendant could be charged with resisting, opposing, impeding, intimidating, or interfering, he could not be convicted unless his conduct *also* amounted to an assault." *Id.* (emphasis original). The Ninth Circuit therefore held, "as suggested by the majority of our sister circuits, that convictions under [§ 111(a)(1)] require at least some form of assault." *Id.* at 1222.

Next, as § 111 does not define "assault," the *Chapman* court turned to the federal generic definition of that term. "To constitute an assault, an action must be either a willful attempt to inflict injury upon the person of another or a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." 528 F.3d at 1219 (cleaned up). In that case, the court of appeals reversed a § 111 conviction. Two federal agents had asked the defendant to move to the side of a walkway away from other pedestrians lined up at a border checkpoint. He refused. The agents tried to physically move the defendant, who "tensed up." When the agents then pulled the defendant's body, one of them slipped and fell. The agent struck the defendant with a baton. Unfazed, the defendant said, "hit me again." Again the agent struck him. When the defendant continued to resist arrest, an agent sprayed pepper spray in his face and handcuffed him. The defendant was convicted of a § 111(a) offense. 528 F.3d at 1217. The Ninth Circuit vacated the conviction because the defendant's actions did not satisfy the federal definition of assault. *Id.*

### B. Elements of a § 231(a)(3) offense

Section 231(a)(3) provides:

Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of

4

>his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—
>
>Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).

"Federally protected function" is defined statutorily. It means "any function, operation, or action carried out, under the laws of the United States, by any department, agency or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails." § 232(3).

Section 231(a)(3) was enacted as part of the Civil Obedience Act of 1968 (COA). Pub. L. 90-284, Apr. 11, 1968, Title X. Senator Russell B. Long of Louisiana sponsored the COA during the Senate's debates over the Civil Rights Act of 1968. 114 Cong. Rec. 1294-96 (Jan. 29, 1968). It was proposed as a rejoinder to the civil rights bill and to the civil rights movement. Senator Long was clear that the purpose of the bill was to jail civil rights leaders. For example, Senator Long said the COA was needed due to "a so-called civil rights march led by Dr. Martin Luther King in the streets of Birmingham in March of 1963." 114 Cong. Rec. 1294 (Jan. 29, 1968). During that march, Long complained, Dr. King had "addressed a tense crowd with inflammatory words," while in jail, King "wrote an inflammatory letter which gained wide recognition in its pleas for Negroes to disobey those laws they felt unjust." *Id.*

There is extraordinarily little precedent interpreting § 231(a)(3), as the government almost never uses the statute to prosecute people, partly on account of its embarrassing origins.

**C.     Elements of a § 1512(c)(2) offense**

Section 1512(c) provides: "Whoever corruptly—

>  (1)    alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
>  (2)    otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . .

§ 1512(c).

Section 1515 defines the term "official proceeding" as used in Section 1512(c). "[T]he term 'official proceeding' means—

>  (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
>  (B) a proceeding before the Congress;
>
>  (C) a proceeding before a Federal Government agency which is authorized by law; or
>
>  (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

§ 1515(a)(1).

Section 1515 also defines the term "corruptly" but only for obstruction offenses charged "in section 1505." § 1515(b). Before this definition was added, the D.C. Circuit had determined that § 1505's adverb "corruptly" was unconstitutionally vague. *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991). Congress subsequently amended § 1515 to provide,

>  *As used in section 1505*, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

§ 1515(b) (emphasis added).

Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002 (SOX). SOX was "[a]n Act to protect investors by improving the accuracy and reliability of corporate

6

disclosures made pursuant to securities laws, and for other purposes." Sabanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.

The legislative history shows that § 1512(c)(2) was a loophole closer meant to address the fact that the existing section 1512(b) covered document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly. A Senate Judiciary Committee report described SOX's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146, at 2 (2002). The report states that the Corporate Fraud Accountability Act was designed to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146, at 14-15. Section 1512(c) did not exist as part of the original proposal. S. 2010, 107th Cong. (2002). Rather, Senator Trent Lott introduced it as an amendment in July 2002. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). The senator explained the purpose of adding § 1512(c):

> [This section] would enact stronger laws against *document shredding*. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered . . . [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

*Id.* at S6545 (emphasis added).

Senator Orin Hatch explained that § 1512(c) would "close [] [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents. *Id.*

7

Unlike § 1512(c), Section 1505 concerns obstruction of congressional proceedings "by threats or force." It provides criminal penalties for:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of *the power of inquiry* under which *any inquiry or investigation* is being had by either House, or any committee of either House or any joint committee of the Congress—

§ 1505 (emphasis added).

The italicized portions of that section show that Congress limited the obstruction-of-Congress offense to a specific kind of congressional "proceeding": those pursuant to Congress's "power of inquiry," which are "inquir[ies] or investigation[s]." § 1505. The legislative history of § 1505 shows that it was designed to prevent obstruction of only those proceedings held pursuant to Congress's investigative power. *Poindexter*, 951 F.2d at 380-81. Section 241, the predecessor of § 1505, was passed in 1940 to bar witness tampering before Congress. As the D.C. Circuit summarized the legislative history: "The Senate and House Reports and the floor debates concerning [§ 1505's predecessor] . . . state that the 'proposed legislation simply extends the protection now provided by law for witnesses in Court proceedings to witnesses in proceedings before either House of Congress or committees of either House (or joint committees).'" 951 F.2d at 381 (quoting .R. Rep. No. 1143, 76th Cong., 1st Sess. 1 (1939); S. Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939)).

Every circuit to address the question has held that, for reasons ranging from legislative history to the plain meaning of the federal obstruction of justice statutes to common sense, the term "official proceedings" defined in § 1515 means judicial or quasi-judicial proceedings where a tribunal receives evidence and makes factual findings. *United States v. Ermoian*, 727 F.3d 894, 901 (9th Cir. 2013); *United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008); *United States v.*

8

*Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009). Before the January 6 cases, the Department of Justice openly acknowledged the fact. *See* DOJ Resource Manual, § 1729 ("Section 1512 of Title 18 . . . proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress . . ."), § 1730 ("The definition [of "proceeding" in § 1512] is in large part a restatement of the judicial interpretation of the word "proceeding" in §§ 1503 and 1505."), available at: https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or.

The Congressional Record plainly shows the joint session was not exercising Congress's investigatory power on January 6. To the contrary, it shows that members of the House and Senate requested but did not receive such power. 167 Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021).

**II.     The superseding indictment and information provided by the government**

On June 24, the government filed a superseding indictment. ECF No. 25.

Count 1 charges that on January 6, Mostofsky "committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function." Superseding Indictment, Count 1. Count 1 charges a violation of § 231(a)(3).

Count 3 charges that on January 6 Mostofsky "did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any

9

branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve the intent to commit another felony." Superseding Indictment, Count 3. Count 3 charges a violation of § 111(a)(1).

In March, counsel held a call with the first Assistant U.S. Attorney assigned to this matter. Counsel inquired about the basis for Mostofsky's felony charges under § 231(a)(3) and § 111(a)(1). The AUSA replied that there was a video showing Mostofsky forcibly "shoving" a police officer near a barricade on January 6. As that video had not been produced to the defense, counsel asked for a copy. The government duly provided one, which has the Bates number 20210106_FELONY RIOTS_-_100_D_ST_NW. The portion of the video relevant to Mostofsky lasts about 30 seconds. Mostofsky is providing a copy to the Court via a Dropbox link delivered directly to chambers. The clip has been edited to include only the approximately 30 seconds of footage relevant to this case.

The Court will notice that the video does not show Mostofsky shoving a police officer. It will also notice that it does not show Mostofsky touching an officer. Instead, the video depicts the following. A line of protestors stand on the far side of a metal barricade near the Capitol on January 6. A police officer orders other officers to pick up the barricade and run it into the crowd to move it back. Mostofsky comes into view, wearing a fur pelt. The barricade lifted up by the officer is rammed into Mostofsky. He can be heard saying, "I can't move."

By May 7, over a month ago, the third AUSA had entered the case. On that date, counsel held a phone call with that AUSA. Counsel indicated he wished to discuss how the video clip did not support the felony charges under § 231(a)(3) and § 111(a)(1) and whether there was some

other basis for the charges. The third AUSA indicated she had not yet viewed 20210106_FELONY RIOTS_-_100_D_ST_NW. Counsel stressed that the relevant portion was only 30 seconds long and that it did not support the charges. Counsel wrote to the third AUSA following the call and provided the Bates number of the clip, noting that the AUSA had said on the call she would watch the clip and discuss it with counsel the following Friday, May 14.

On May 11, counsel again wrote to the third AUSA and said, "let's be prepared to discuss the [30-second] body cam video." In response, the AUSA said, "I have not viewed all video/images regarding your client and I doubt that I will have by this Thursday. I am concentrating on providing discovery on this and several other cases."

On May 20, counsel again wrote to the AUSA and said, "the government has produced no evidence to date showing why the government has probable cause of a crime under [§ 231(a)(3) and § 111(a)(1)]. I have asked you whether you have had time to review an approximately 30 second video clip that, according to the first AUSA on this case, predicated the 231 and 111 offenses. You told me you did not have time last week, and perhaps this week, to review the 30 second clip."

On May 25, counsel called the AUSA. The AUSA indicated she had viewed the 30 second clip. Counsel inquired whether this was the evidence supporting the § 231(a)(3) and § 111(a)(1) charges or whether additional evidence existed. The AUSA indicated that the 30-second clip was the evidence but that additional videos may emerge that also support the charges and that other videos might also provide support. The government provided another video of Mostofsky outside the Capitol, either before or after the moment at the barricade, though it does not show Mostofsky interacting with any law enforcement officer.

In a subsequent email, counsel made the following inquiries with the government:

11

(1) with regard to the § 111(a)(1) charge, does the government contend that, in the 30 second clip, Mostofsky assaulted a law enforcement officer? Or does the government contend that this interaction constituted a violation of that section notwithstanding the absence of assault?

(2) If the government does not allege assault, does it contend that Mostofsky used force in violating § 111(a)(1)? If so, how?

(3) The indictment charges that Mostofsky's violation of § 111(a)(1) constituted a felony because the criminal act was done with the intent to "commit another felony." Which felony would that be? What evidence supports that alleged intent?

(4) with regard to the § 231(a)(3) charge, to what "act" of Mostofsky's does the indictment refer? Does it refer to the crush at the barricade in the 30 second clip, or some nonphysical act, such as protest?

(5) The § 231(a)(3) offense has the element that the civil disorder adversely affect the conduct or performance of a federally protected function, which in turn requires action by a "department, agency or instrumentality of the United States." Which department, agency or instrumentality of the United States does Count 1 rely on?

The government responded that it would not provide answers to these questions and that it opposes Mostofsky's request for a bill of particulars.

## III.   Argument

### A.   Standard for a bill of particulars

The court may direct the government to file a bill of particulars.  Fed. R. Crim. P. 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 73 (D.D.C. 2019) (internal quotation marks omitted).  The defendant may move for a bill of particulars before or within 14 days after arraignment or at any time with Court permission.  Fed. R. Crim. P. 7(f).

A bill of particulars is appropriate for identifying the specific acts a defendant allegedly took to commit the offense, where the indictment fails to allege them or does so vaguely.  *United*

*States v. Ramirez*, 54 F Supp. 2d 25, 90 (D.D.C. 1999) (government required to provide particulars as to all overt acts in which any defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy); *United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (government ordered to identify specific overt acts of defendants); *United States v. Brown*, 2007 U.S. Dist. LEXIS 49169, *45 (D.D.C. July 9, 2007) (ordering government to identify in bill of particulars "specific alleged actions and specifically worded false statements on which the government shall rely in proving its case"); *United States v. Siddiqi*, 2007 U.S. Dist. LEXIS 15410, *8 (S.D.N.Y. Feb. 21, 2007) (bill of particulars must specify the dates and amounts of bribes defendant allegedly paid); *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007) (requiring government to identify proceeds allegedly used in support of criminal enterprise so defendant does not "waste precious pre-trial preparation guessing what data . . . will be relevant to [the] defense"); *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) ("[T]he indictment fails to state which specific documents were fraudulent, and what was allegedly fraudulent about the documents at issue. Defendant must also be put on notice as to the specific dates of the allegations, the documents, and what the false statements were within the documents."); *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (ordering government in health care fraud case to identify in a bill of particulars the specific false entries in physician's records and specific fraudulent bills to insurers); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) ("A defendant faced with false statement charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against . . . when the government knows precisely the statements on which it intends to rely and can easily provide the information); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (granting in part a motion for a bill of particulars "as it

13

relates to the defendant's request for the basis of the government's allegations that the defendant solicited and received things of value for and because of official acts performed and to be performed by defendant"); *United States v. Royal Caribbean Cruises, Ltd.*, 24 F. Supp. 2d 155 (D.P.R. 1997) (mandating that the government notify the defendants of the specific proceeding that was obstructed); *United States v. McGuinness*, 764 F. Supp. 888, 892-94 (S.D.N.Y. 1991) (holding that government must provide defendant bill of particulars listing approximate date and amount of payments allegedly made in violation of Taft-Hartley Act); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (reversing conviction for failure to require a bill of particulars setting forth specific staged burglaries and specific insurance claims alleged to be false); *United States v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979); *United States v. Baker*, 262 F. Supp. 657, 674 (D.D.C. 1966) (granting the tax defendant's motion for a bill of particulars "specify[ing] the statements and/or acts by which defendant is claimed to have aided, assisted in, counseled, procured, or advised the preparation and presentation" of the false tax return).

  **B.**  **The Court should order the government to file a bill of particulars**

    1.  The indictment's nonspecific § 111(a)(1) allegations

Count 3 charges that Mostofsky did forcibly assault *and* resist *and* oppose *and* impede *and* intimidate *and* interfere with a law enforcement officer on January 6. These are all separate offenses charged together in a vague jumble. The superseding indictment does not allege how or when Mostofsky did any, much less all, of those things. It does not allege whether there is only one law enforcement officer involved or more than one.

Moreover, Count 3 simultaneously charges a misdemeanor offense under § 111(a) and a felony. As shown above, the majority of circuits hold that the government must prove an assault, which "must be either a willful attempt to inflict injury upon the person of another or a threat to

14

inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Chapman*, 528 F.3d at 1219.  The indictment gives no indication whether the government is alleging that Mostofsky committed such an assault or, if so, whether it alleges that Mostofsky may be held liable absent such an assault and if so, whether such an offense would constitute a misdemeanor or a felony.

This Circuit holds that "forcibly" in § 111(a) modifies every actus reus verb in that statue. *United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990).  Yet the indictment does not indicate how Mostofsky used force or when.

The indictment alleges that Mostofsky violated § 111(a) with "the intent to commit another felony." It does not allege what that other felony was or what evidence showed such an intent. These distinctions go to the very heart of how Mostofsky would defend himself in this case.  The indictment does not provide fair notice of how the government intends to pursue this charge.  The government should therefore file a bill of particulars answering these basic questions.  *Trie*, 21 F. Supp. 2d at 21; *Ramirez*, 54 F Supp. 2d at 90.

      2.      The indictment's nonspecific § 231(a)(3) allegations

Count 1 charges Mostofsky with committing *and* attempting to commit "an act" to obstruct *and* impede *and* interfere with a law enforcement officer during a civil disorder that obstructed *and* delayed *and* adversely affected "the conduct and performance of a federally protected function."

The indictment does not allege the "act." It does not allege how that unspecified "act" obstructed or impeded or interfered with a law enforcement officer.  It does not allege whether the "act" was physical, whether it involved force, or whether it was some act of protest that did not involve those things.  It does not allege how many law enforcement officers are involved.

The indictment does not allege the fact or facts supporting the element that the civil disorder on January 6 obstructed, delayed and adversely affected the conduct and performance of a federally protected function. As shown above, a "federally protected function" requires a function of a "department, agency or instrumentality of the United States." § 232(3). The indictment does not allege what department, agency or instrumentality of the United States was adversely affected by the civil disorder on January 6.

Attempt is an inchoate offense that always requires specific intent. *United States v. Bailey*, 444 U.S. 394, 405 (1980). But the indictment does not allege whether that *mens rea* or some other one applies.

The indictment does not provide fair notice of how the government intends to pursue this charge. It is not close. The government should therefore file a bill of particulars answering these basic questions. *Trie*, 21 F. Supp. 2d at 21; *Ramirez*, 54 F Supp. 2d at 90.

        3.        The indictment's nonspecific § 1512(c)(2) allegations

Count 2 alleges that on January 6 Mostofsky attempted to *and* did corruptly obstruct *and* influence *and* impede an official proceeding, which "specifically" was Congress's certification of the Electoral College vote.

The indictment provides no indication of how Mostofsky did those things. Who was obstructed by Mostofsky? Who was influenced or impeded by him?

The indictment provides no indication of how it uses the adverb "corruptly." Does the government allege "corruptly" in the transitive adverbial sense meant by this Circuit's decision in *Poindexter*? If so, whom did Mostofsky corrupt and in what sense? If the indictment instead uses "corruptly" to allege an "improper purpose," *Poindexter*, 951 F.2d at 386, what is the

alleged improper purpose? A sincere but mistaken political view? An insincere and mistaken political view?

Because it does not even plead the facts showing Mostofsky allegedly obstructed Congress, the indictment does not indicate whether the "obstruction" is limited to Mostofsky's entry into the Capitol Building or to some specific act inside that building.  Does the indictment allege Mostofsky's activities outside the Capitol, including protected political expression in the form of protest, are a violation of § 1512(c)(2)? At what point did Mostofsky's actions on January 6 become a felony violation of § 1512(c)(2)?

Since the indictment provides no notice of these factors, Mostofsky cannot prepare a defense, minimize surprise at trial, or avoid double jeopardy.  The government must provide a bill of particulars identifying the facts relevant to its § 1512(c)(2) charge.  *Trie*, 21 F. Supp. 2d at 21; *Ramirez*, 54 F Supp. 2d at 90.

**Conclusion**

For the foregoing reasons, the Court should order the government to file a bill of particulars that specifically details the information requested by this motion.

Dated: June 24, 2021                                                            Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com


Nicholas D. Smith, D.C. Bar No. 1029802
David B. Smith, PLLC
7 East 20th Street, Suite 4R
New York, NY 10003

17

(917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Mostofsky*

**Certificate of Service**

I hereby certify that on the 24th day of June, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> Graciela Lindberg
> Assistant United States Attorney
> 555 4th Street, N.W.
> Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, VA Bar No. 25930
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com