## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-cr-138 |
| | ) |
| AARON MOSTOFSKY, | ) **Judge James E. Boasberg** |
| | ) |
| Defendant. | ) |
| | ) |

### DEFENDANT MOSTOFSKY'S EXPEDITED MOTION TO COMPEL PRODUCTION OF FEDERALLY PROTECTED FUNCTION EVIDENCE

Defendant Mostofsky, through his counsel, files this expedited motion to compel production of a narrow category of documents, data and records, pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1. Trial is scheduled for October 18. All pretrial motions must be filed by September 1. Asked to provide a date certain by which the materials discussed in this motion would be produced to the defense, the government could not or would not give Mostofsky an answer. Given the tight deadlines, the Court should order the government either to promptly produce the materials or to state they are not in its possession.

### I.    "Federally protected function" evidence

The Court ordered the government to specify in a bill of particulars which "federally protected function" supports the Superseding Indictment's civil disorder charge under 18 U.S.C. § 231(a)(3). Mem. Op., pp. 6-7. The Court will recall that, as an element of that offense, the government must prove beyond a reasonable doubt that the "civil disorder" on January 6 had an adverse effect on a "federally protected function," § 231(a)(3), as the government disclaims any

1

reliance on interstate commerce in the January 6 cases.[1]

The Court will recall that "federally protected function" is defined as any "function, operation or action carried out . . . by any *department, agency, or instrumentality* of the United States or by an officer or employee thereof." 18 U.S.C. § 232(3) (emphasis added). It will also recall that Section 6 defines "department" and "agency" for Title 18—18 U.S.C. § 6—and that the D.C. Circuit has held that congressional entities do not satisfy those definitions. See *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) (after Supreme Court's decision in *United States v. Hubbard*, 514 U.S. 695 (1995), "an entity within the Legislative Branch cannot be a 'department' within the meaning of § 1001 and 18 U.S.C. § 6," nor is Congress an "agency" under § 6); *United States v. Dean*, 55 F.3d 640, 659 (D.C. Cir. 1995) (reversing convictions under § 1001 for false statements to Congress, as *Hubbard* "narrowed the reach of ["department" and "agency"] *to matters within the executive branch*") (emphasis added).

If *Oakar*, *Dean*, and *Hubbard* leave any doubt in the Court's mind, it could simply look to how Title 18 routinely distinguishes between congressional entities, on the one hand, and "departments" or "agencies" "of the United States," on the other hand. Consistent with *Hubband-Oakar-Dean*, the latter always lie "within the executive branch." See, e.g., 18 U.S.C.§ 1505 (distinguishing between obstruction of congressional proceedings and "proceeding[s] . . . before any department or agency of the United States. . .").

The government's particulars response identified a bulleted list of "federally protected functions" alleged to have been adversely affected by the "civil disorder" on January 6:

---

[1] As the Court may intuit, the government almost certainly made the strategic decision not to rely on interstate commerce, even alternatively, in an attempt to deny standing to defendants who wish to facially challenge Section 231 on Commerce Clause grounds under *United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 298 (2000).

- Pursuant to 2 U.S.C. § 1961, the U.S. Capitol Police is responsible for the protection of the United States Capitol building and its grounds. The civil disorder on January 6 obstructed and adversely affected the protection of the building and its grounds.

- Pursuant to 2 U.S.C. § 1970, executive departments and executive agencies may assist the United States Capitol Police in the performance of its duties by providing, *inter alia*, services (including personnel) and equipment, including when requested during an emergency. The civil disorder on January 6 obstructed and adversely affected the emergency response by executive departments and executive agencies.

- Pursuant to 3 U.S.C. § 6, the Archivist of the United States has the responsibility to safeguard the electoral certificates submitted by the states. The civil disorder on January 6 obstructed and adversely affected the maintenance of such certificates.

- Pursuant to 3 U.S.C. § 15, the Vice President, as President of the Senate, presides over the final counting of the Electoral College vote, and the Vice President is responsible for declaring the winner of the election. *Id.* (Vice President "shall announce the state of the vote."). The civil disorder on January 6 obstructed and adversely affected the execution of the Vice President's Constitutional and statutory duties.

- Pursuant to 3 U.S.C. § 101, the term of office for President "shall, in all cases, commence on the 20th day of January next succeeding the day on which the votes of the electors have been given." The civil disorder on January 6 obstructed and adversely affected the counting of the votes of the electors, that is, the federally protected function of the election of the President and Vice President.

- Pursuant to 18 U.S.C. § 3056, the United States Secret Service is authorized to protect, among others, the Vice President and the Vice President-elect. The civil disorder on January 6 obstructed and adversely affected the conduct and performance of the Secret Service in the performance of this federally protected function.

- Pursuant to 40 U.S.C. § 1315, the Department of Homeland Security has the responsibility to protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government and persons on the property. The civil disorder on January 6 obstructed and adversely affected the conduct and performance of the Department of Homeland Security in the performance of this federally protected function.

ECF No. 38, pp. 3-4.

The first thing to notice about this list is that the government is not alleging that the

"federally protected function" adversely affected by the "civil disorder" on January 6 was the

joint session of Congress and Electoral College vote count.  However, the joint session of Congress was almost certainly what the government presented to the Grand Jury in support of this element of the offense when it sought to return the charge against Mostofsky.

Notice also that the items in the government's list do not appear to satisfy Section 6's definitions of "department" and "agency," which the D.C. Circuit has construed to mean *executive* departments and agencies.  *Oakar*, 111 F.3d at 153; *Dean*, 55 F.3d at 659.   To take the most obvious example, the U.S. Capitol Police (USCP) is not an executive department or agency because (1) it is operated by the Capitol Police Board, which is composed solely of congressional not executive entities, see Capitol Police Board, U.S. Capitol Police, https://www.uscp.gov/the-department/oversight/capitol-police-board; and (2) one of the federal statutes cited in the government's particulars response explicitly states that USCP is not an executive department or agency.  2 U.S.C. § 1970 (executive departments and agencies may "assist" USCP, which is therefore not the same thing).  The same goes for the Archivist of the United States, the chief administrator for the National Archives and Records Administration—which is not an executive department or agency under Section 6.  See § 6; 5 U.S.C. § 101 (defining "executive departments") and § 105 (defining "executive agency").

The Court will also notice that, USCP aside, the government appears to cite at least three other law enforcement agencies: the U.S. Secret Service; unidentified "executive departments and executive agencies," which may or may not be law enforcement agencies; and the Department of Homeland Security—though again the government does not identify the particular DHS agency it claims was adversely affected by the civil disorder (though that is what the Court ordered it to do).  Apart from vagueness, the problem here is that the government cannot rely on a law enforcement agency to serve as the "federally protected function." For that

would be to read the "federally protected function" element out of Section 231(a)(3).  Another element of the Section 231(a)(3) offense is that the defendant "obstruct, impede, or interfere with any . . . law enforcement officer lawfully engaged in the lawful performance of his duties incident to and during the commission of a civil disorder . . ." § 231(a)(3).  If the obstructed "law enforcement officers" were both the function that protects the "federally protected function" during the disorder and also the protected function itself, the latter element and its definition would be surplusage.  The government's entire meaning would be captured in a statute that criminalized obstructing law enforcement during a civil disorder—without any need for a federally protected function.[2]  That is not how statutes are construed.  See, e.g., *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (statutes are construed to avoid surplusage).

In the only decision Mostofsky could find on the issue, the district court implied that, had the government not been relying alternatively on interstate commerce in that case, the court would have dismissed the Section 231(a)(3) charges because the government merely pointed to law enforcement officers, not a "federally protected function." See *United States v. Rupert*, 2021 U.S. Dist. LEXIS 53152, *43 (D. Minn. Jan. 6, 2021).

For all these reasons, and to prepare for trial in October, Mostofsky asked the government to produce all "documents" and "data" on which the government based its "federally protected function" response in the bill of particulars, e.g., materials showing that "Executive departments and agencies" were adversely affected by a "civil disorder."  Fed. R. Crim. P. 16(a)(1)(E) (government must permit the defendant to inspect and copy documents and data material to

---

[2] Notice that the statutory definition of "federally protected function" gives a specific example of one: "the collection and distribution of U.S. mails." § 232(3).  Of course, that is not a law enforcement function.  Law enforcement *protects* that function.

preparing the defense or which the government intends to use in its case-in-chief); LCrR 5.1 (government must produce *Brady* material to the defense as soon as reasonably possible after its existence is known).

The government responded that it has no obligation to explain to the defense "how" it will prove its case. Mostofsky advised that he is not asking the government to explain anything to him, but rather to produce "documents" and "data" that support the government's particulars response that numerous "federally protected functions" were adversely affected by a civil disorder, because those things are "material to preparing the defense" and the government said it would use them in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(E)(i),(ii).

He also advised that he needed the materials produced as soon as possible given (1) the October 18 trial date; and (2) the September 1 motion date. Mostofsky advised that the government should be able to produce these materials now, as its particulars response implies that they were already gathered for use in the Grand Jury. In response, the government produced a single document, apparently used in the Grand Jury, that concerns the USCP and narrates its operations on January 6.

The government would not provide a date by which it would produce any additional evidence supporting the numerous "federally protected function" entities listed in its particulars response. This information must be produced before the motions deadline of September 1—if it is within the government's possession. Among other reasons, the government was required to present every element of the Section 231 offense to the Grand Jury and adduce evidence to show probable cause that the elements were satisfied. Otherwise, the Section 231 charge conflicts with Mostofsky's presentment right under the Fifth Amendment. U.S. Const. amend. V; *Alleyne v. United States*, 570 U.S. 99, 103 (2013) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 500

(2000)); *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 1783 (2002) ("In federal prosecutions, [*Apprendi*] facts must also be charged in the indictment" and presented to the Grand Jury).

## II.   Argument

Rule 16 provides, "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

As this Court has noted on many occasions, "the government cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16.  Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *United States v. Safavian*, 223 F.R.D. 12, 15 (D.D.C. 2005).  Moreover, "burdensomeness and logistical difficulty . . . cannot drive the decision whether items are 'material' to preparation of the defense.  Nor can concerns about confidentiality and privacy rights of others trump the right of one charged with a crime to present a fair defense." *United States v. O'Keefe*, 2007 U.S. Dist. LEXIS 31053, *4 (D.D.C. Apr. 27, 2007); *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy burden"; evidence material if there is indication that it may play an "important role

in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal").

Rule 5.1 of the Local Criminal Rules provides, "Beginning at the defendant's arraignment and continuing throughout the criminal proceeding, the government shall make good-faith efforts to disclose [*Brady*] information to the defense *as soon as reasonably possible after its existence is known*, so as to enable the defense to make effective use of the disclosed information in the preparation of its case." LCrR 5.1(a) (emphasis added).  The rule defines *Brady* material to include, among other things, "information that is inconsistent with or tends to negate the defendant's guilt as to any element . . . of the offense(s) with which the defendant is charged"; "information that tends to mitigate the charged offense(s) or reduce the penalty"; and "information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged." LCrR 5.1(b).  The rule provides that "If the government fails to comply with this rule, the Court, in addition to ordering production of the information, may. . .  enter any . . . order that is just under the circumstances." LCrR 5.1(g)(4).

As explained above, the existence or not of a "federally protected function" adversely affected by a "civil disorder" on January 6 is an essential element of a felony charge against Mostofsky.  In its bill-of-particulars response, the government identified the specific "federally protected functions" it claims were affected by a civil disorder.  Under Rule 16 and Local Criminal Rule 5.1, Mostofsky is entitled to the evidence the government claims was already compiled and shown to the Grand Jury to return the Section 231(a)(3) charge against him.

If this evidence does not support the government's charge, Rule 5.1 says that the government must produce such information to Mostofsky as soon as reasonably possible.  LCrR

5.1(a).  Just as important, there is a trial calendared in October and a motions deadline on September 1.  He needs the "federally protected function" materials to inform the motions he will file by that date.  If the government does not have within its possession, custody or control evidence supporting its claim that its list of "federally protected functions" was affected by the "civil disorder" on January 6, the government should immediately say so.

For all the foregoing reasons, the Court should order the government to promptly produce the "federally protected function" evidence or state that it is not in its possession, custody or control.

Dated: August 16, 2021                            Respectfully submitted,


/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com


Nicholas D. Smith, D.C. Bar No. 1029802
David B. Smith, PLLC
7 East 20th Street, Suite 4R
New York, NY 10003
(917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Mostofsky*

**<u>Certificate of Service</u>**

I hereby certify that on the 16th day of August, 2021, I filed the foregoing motion with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following CM/ECF user(s):

>    Graciela Lindberg
>    Assistant United States Attorney
>    555 4th Street, N.W.
>    Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>    /s/ David B. Smith
>    David B. Smith, VA Bar No. 25930
>    David B. Smith, PLLC
>    108 North Alfred Street, 1st FL
>    Alexandria, Virginia 22314
>    (703) 548-8911 / Fax (703) 548-8935
>    dbs@davidbsmithpllc.com

10