UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-138 (JEB) |
| | : | |
| AARON MOSTOFSKY, | : | |
| | : | |
| Defendant | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S EXPEDITED MOTION TO COMPEL PRODUCTION OF BRADY COMPILATION EVIDENCE

On August 18, 2021, the defendant filed an expedited motion to compel production of

*Brady*[1] compilation evidence (the "Defense Motion") (ECF No. 41).   Citing to the

government's representation in another case that "we possess some information that the defense

may view as supportive of arguments that law enforcement authorized defendants . . . to enter the

restricted grounds,"[2] the defendant requests the Court order the government to promptly produce

material that has already been compiled. For the reasons cited below, and as may be further

explained at any hearing on this matter, the Defense Motion is meritless and should be denied.

### FACTUAL BACKGROUND

The defendant is charged via indictment with three felony and five misdemeanor offenses

arising out of his conduct in connection with the attack on the U.S. Capitol on January 6, 2021

(the "Capitol Breach").   In brief, the conduct alleged to support these offenses includes his

pushing against a line of officers who were trying to adjust a barrier between themselves and

rioters; and his entry into the Capitol and his misappropriation of both a police vest and a riot

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *United States v. Couy Griffin,* 21-cr-92, ECF No. 44 at 12 (August 9, 2021).

shield, including wearing the police vest and holding the shield.

The defendant was arrested approximately seven and one-half months ago, on January 12, 2021, and has been on pretrial release since his arrest.

The government has provided defense counsel with significant case-specific discovery including clips of body-worn-camera footage and Capitol surveillance footage depicting the defendant inside and outside the U.S. Capitol on January 6, 2021; nearly all of the Federal Bureau of Investigation's ("FBI") investigative case file specific to the defendant; grand jury materials including the transcript and exhibits used to support the initial indictment; and copies of arrest and search warrants with accompanying affidavits and returns.   We have also provided the defendant the results from the search of his device pursuant to a warrant and returned his device to him.   To assist the defendant in reviewing discovery, we produced materials in a digital format along with a 68-page index. We have also arranged multiple opportunities for defense counsel and an investigator to walk through the crime scene.

On July 21, 2021, the government filed a memorandum regarding the status of discovery (as of July 12, 2021) (ECF No. 34), incorporated herein by reference (the "July 12 Discovery Status Memorandum"). On August 26, 2021, the government filed a memorandum regarding the status of discovery as of August 23, 2021 (ECF No. 44), incorporated herein by reference (the "August 23 Discovery Status Memorandum").   Collectively, these documents are referred to as our "Status Memoranda." The Status Memoranda largely pertained to the production of discovery from voluminous sets of data that the government collected in its investigation of the Capitol Breach cases, among which may be interspersed information the defense may consider

material or exculpatory.[3]

On September 1, 2021, the United States filed a motion to vacate the trial currently set for October 18, 2021, to grant a 60-day continuance of the above-captioned proceeding, and further to exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. (the "STA"), on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv) (the "STA Motion") (ECF No. 48), incorporated herein by reference.   As elaborated in further detail in the STA Motion, it is the government's commitment to ensuring that all arguably exculpatory materials are produced in a comprehensive, accessible, and useable format that, in the main, underlies the government's pending request to toll the STA.

## ARGUMENT

The Defense Motion wrongly assumes that the government has compiled certain information that is arguably exculpatory but is waiting to turn it over to the defense until it has identified *all* information that may be exculpatory.   To the contrary, as the government made clear in its August 23 Discovery Status Memorandum, we expect to produce materials related to allegations of police misconduct – the same materials to which the government was alluding it its August 9, 2021, representation in the Couy Griffin case – next week.   As we stated in our July

---

[3] The materials upon which the Status Memoranda focused include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act ("SCA") accounts, digital media tips, Parler video, and unpublished news footage), and hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement.

12 Discovery Status Memorandum, we are prioritizing allegations of police misconduct for production specifically because multiple defense counsel have inquired about investigations into officers who were *alleged* to have been complicit in the January 6 Capitol Breach.

We are acting diligently to produce such materials.   After we received Office of Professional Responsibility ("OPR") files from the U.S. Capitol Police ("USCP"), we had to review them (including corresponding exhibits), organize them, load them to Relativity, and process them – including appropriate redactions.[4]   As elaborated in our August 23 Discovery Status Memorandum, these processes are not wholly automated and take some time, but they are being performed as expeditiously as possible.

Further, we are not holding back materials while waiting to amass all similar materials. To the contrary, as we have previously stated, we plan to make document productions from voluminous materials on a rolling basis – after taking necessary steps to avoid production of unorganized data dumps, unreadable files, and unusable databases, and to protect private information that will be shared with hundreds of defendants.   Thus, as we stated in our August 23 Discovery Status Memorandum, the defendant can expect to receive a production of USCP OPR files during the week beginning September 5, 2021.   We expect to handle Metropolitan Police Department excessive force investigations in a similar matter shortly thereafter.

For the reasons stated in our STA Motion, the defendant's statutory right to a speedy trial has not been, and is in no danger of being, violated.   "The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim.   *See* 18 U.S.C. §

---

[4] Investigations into allegations of misconduct are always highly sensitive matters, and even more so here, given the high-profile nature of this investigation, the number of defendants who would be receiving these reports, and the nature of the allegations (the vast majority of which were not sustained).

3173.  "But as a number of courts have noted, it will be an 'unusual case' in which the Act is followed but the Constitution violated."  *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014).

In order to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530 (1972).   Under the first factor, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial in order for the claim to proceed. *Id.*   If that threshold requirement is met, then the Court must consider the length of the delay "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  *Doggett v. United States*, 505 U.S. 647, 652 (1992).

There is no presumption of prejudice here so the defendant cannot even make a threshold showing that his claim should proceed.   The determination as to whether a delay is presumptively prejudicial is dependent upon the peculiar circumstances of the case.   *Barker*, 407 U.S. at 530-31; *United States v. Marshall*, 669 F.3d 288, 295–96 (D.C. Cir. 2011) (requiring the district court to make factual findings regarding defendant's allegation that the government did not overcome the presumption of prejudice for delays over one year); *United States v. Taylor*, 497 F.3d 673, 677 (D.C. Cir. 2007) (assuming without deciding that a delay barely over one year between the indictment and trial was presumptively prejudicial).

Even assuming a *Doggett* inquiry were appropriate, a presumption of prejudice is rebuttable.   The delay experienced in this case, which involves unprecedented complex discovery issues that affect hundreds of defendants, easily passes constitutional muster.  *See,*

*e.g., United States v. Bikundi,* 926 F.3d 761, 780 (D.C. Cir. 2019)(Although the delay of

approximately 18 months in defendant's prosecution for health care fraud, conspiracy to commit

health care fraud, money laundering, and conspiracy to commit money laundering triggered

inquiry into whether she was deprived of her constitutional speedy trial right, factors of the

length of the delay and the reason for the delay weighed in favor of government; defendant's

case involved complex conspiracy charges with complicated evidence and multiple defendants,

requiring voluminous discovery, defendant had herself filed multiple pretrial motions which

contributed to the length of the proceedings, as well as an interlocutory appeal, and she

consented to two of the continuances that were granted); *United States v. Lopesierra–Gutierrez*,

708 F.3d 193, 202–03 (D.C. Cir) (2013) (three-and-one-half-year delay not prejudicial because

complex conspiracy charge involved executing 15 extraditions, fairly treating 15 codefendants,

collecting and deciphering foreign evidence, and coordinating with foreign witnesses); *United

States v. Tchibassa*, 452 F.3d 918 (D.C. Cir. 2006) (no violation despite eleven-year delay

between indictment and arrest).

In sum, there is no constitutional "Sophie's choice" (Defense Motion at 1) between the

defendant's right to a speedy trial and his right to potentially exculpatory material.   Our plan to

provide the defendant with all data that may contain material or arguably exculpatory

information in a manner that will facilitate the search, retrieval, sorting, and management of that

information, and to be diligent in our efforts, honors both of those rights.   Given the volume of

material – a large portion of which was generated on January 6 when thousands of individuals,

including the defendant, collectively participated in an attack at a heavily surveilled location,

chose to record their actions on their own digital devices, and subsequently posted evidence of

their criminal conduct on social media – our plan will take time.   It will not be substantially

completed by the time of the scheduled trial date.   That is why the government requested in its

STA Motion that the Court vacate the current trial date and set a status hearing in sixty days to

monitor the government's progress and ensure that discovery production continues to be handled

diligently.   As elaborated in the STA Motion, the need for reasonable time to address discovery

obligations is routinely held a sufficient ground to grant continuances and exclude time under the

STA – and in cases involving far less complexity in terms of the volume and nature of data.   As

discussed above, the defendant's constitutional speedy trial rights are also in no danger of being

violated given the government's ongoing efforts to address unprecedented complex discovery

issues.   It is only the defendant's own insistence on going to trial prematurely that poses any

obstacle to the government's ability to honor his constitutional rights, and that is why we also

requested the Court grant our STA Motion notwithstanding his potential lack of consent.

**CONCLUSION**

For the reasons described above, and any others that may be offered at a hearing on this

matter, the government requests the Court deny the defendant's motion to compel production of

*Brady* compilation evidence.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:   /s/ *Emily A. Miller*
    EMILY A. MILLER
    Capitol Breach Discovery Coordinator
    DC Bar No. 462077
    555 Fourth Street, N.W., Room 5826
    Washington, DC 20530
    Emily.Miller2@usdoj.gov
    (202) 252-6988

By:   /s/ *Graciela R. Lindberg*
    GRACIELA R. LINDBERG
    Assistant United States Attorney
    TX Bar No. 00797963
    11204 McPherson Road, Suite 100A
    Laredo, TX 78045-6576
    Graciela.Lindberg@usdoj.gov
    (956) 721-4960