## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Case No. 1:21-cr-138 |
| | ) |
| AARON MOSTOFSKY, | ) **Judge James E. Boasberg** |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT MOSTOFSKY'S OPPOSITION TO THE GOVERNMENT'S MOTION TO VACATE TRIAL DATE AND CONTINUE TRIAL AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

Defendant Mostofsky opposes the government's motion to vacate the trial date and to exclude time within which a trial must commence under the Speedy Trial Act (STA). ECF No. 48. Although it is not styled this way, the government's request is a motion for reconsideration, as the Court rejected its ends-of-justice continuance arguments during the status conference on August 6 and set trial for October 18. Because the Court did not "patently misunderstand the parties," make a decision "beyond the adversarial issues presented," or err "in failing to consider controlling decisions or data," there is no basis to reconsider the Court's previous trial date order. *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).

## I.    The August 6 status conference and the parties' discovery progress to date

On August 6, the government provided a status update regarding discovery progress. The substance of that update is reproduced in the government's opposition to Mostofsky's Motion to Compel the Production of January 6 *Brady* Compilation Evidence. ECF No. 49, p. 2. Specifically, the government advised that it had already provided the defense with:

> [S]ignificant case-specific discovery including clips of body-worn-camera footage and Capitol surveillance footage depicting the defendant inside and outside the U.S. Capitol

1

on January 6, 2021; nearly all of the Federal Bureau of Investigation's ("FBI") investigative case file specific to the defendant; grand jury materials including the transcript and exhibits used to support the initial indictment; and copies of arrest and search warrants with accompanying affidavits and returns. We have also provided the defendant the results from the search of his device pursuant to a warrant and returned his device to him. To assist the defendant in reviewing discovery, we produced materials in a digital format along with a 68-page index. We have also arranged multiple opportunities for defense counsel and an investigator to walk through the crime scene.

ECF No. 49, p. 2.

At the same time, the government advised the Court that it needed additional time to produce general (as opposed to case-specific) January 6 discovery, such as the entire universe of MPD body-worn camera footage and Capitol surveillance video from January 6; the content of devices seized from hundreds of defendants; and hundreds or thousands of law enforcement investigation files documenting possible police misconduct, among other things.  To comply with its discovery obligations, including those pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the government requested that the Court grant a 60-day ends-of-justice continuance pursuant to the STA.  Mostofsky, who was indicted nearly seven months ago, opposed the request, noting that he was not thereby waiving his *Brady* and related discovery rights.  The Court declined to grant a continuance, setting a trial date of October 18 and a pretrial motions deadline of September 1.

Following the August 6 conference, Mostofsky has repeatedly requested that the government prioritize case-specific discovery that he has itemized in writing.  He has also asked the government to provide notice as to when it will produce basic, case-specific discovery categories essential to trial in October, such as Jencks and general impeachment materials; any proposed Rule 404(b) material; body-worn camera footage for the entire day of January 6 but only for the officer witnesses identified by the government; and preliminary exhibit and witness lists.  Mostofsky has repeatedly asked the government to confirm that it will make certain U.S.

Capitol Police officers available so they will not need trial subpoenas.  He has not received answers to these questions and requests.  None of them concerns the general, voluminous January 6 discovery that the government says it needs additional weeks or months more to produce.

For example, Mostofsky has sent the following email to the government multiple times in the past two weeks without receiving a substantive response:

-- Please confirm USG has requested from MPD reports/findings/assessments/memoranda on the actions/conduct/performance *of the officer witnesses* on 1/6 and/or regarding MPD compliance with the DC Code and any other applicable laws and regulations on 1/6.  Please let us know when you anticipate either producing these materials or confirming they are not in MPD possession, custody or control. We understand the full BWC videos for 1/6 are being produced *for all MPD witnesses.*[1]

--As you know, the Senate published a report analyzing the security issues involved on 1/6, titled Examining the U.S. Capitol Attack: a review of the security, planning and response failures.  Two of the documentary sources are the "US Capitol Police Timeline of Events for January 6 Attack" and the Joint Committee Interview with USCP Inspector on 5/27/21.  HSGAC&RulesFullReport_ExaminingU.S.CapitolAttack.pdf (senate.gov).   As you can see from the Senate report, much of those two sources is repeated and summarized in the report itself, but please produce the sources, as they are relevant to a number of issues in this case.  If you do not agree to produce the sources, please let us know whether USG is amenable to stipulating certain facts in the Senate report, such as certain items in the USCP's timeline of events.

--Please provide the name of the USCP officer who engaged with Mostofsky in the Ohio Clock corridor, which is captured by CCTV.  We previously sent images identifying the officer.  He is the one who leans over to peer at the ballistic vest worn by Mostofsky and engages with him.  Please let us know whether you intend to call this officer as a witness.  If not, please confirm you will make him available for trial. If you will not, we would need to know soon, so that we can ensure his appearance.  I am assuming you will also call the officer who grabs the shield from Mostofsky, but please confirm that and let us know the list of any other USCP officer witnesses.

---

[1] As the government's status reports show, the U.S. Attorney's Office has long been in possession of these videos and *could* produce them at any time.  ECF No. 44, p. 8 ("We have already migrated over 2,900 body-worn-camera videos totaling over 2,300 hours (nearly 100 days) into [DOJ's] instance of evidence.com.").  Yet the government has not produced the entire January 6 BWC video for each officer witness.

--Officer Bogner's BWC: thank you for sending the longer clip.  As you note, it starts at 13:47 and ends at 15:07.  Please confirm there isn't additional BWC video (before or after those time points) where he or another MPD officer/employee discusses the function, purpose, or consequences of the dispersal order.[2]

--Summary witness: it's not clear if the Court would allow/feel the need for a government summary witness in a bench trial, but please let us know if you intend to use summary testimony.  If so, will that witness be SA [agent's name]?

--Can you let us know when you intend to provide preliminary exhibit and witness lists, and when the government will be providing Jencks and general impeachment materials?

8/27/21 Email from Mostofsky's counsel to government.

Besides not timely producing those case-specific materials and/or not advising whether or when they will be provided, the government has collected, but not produced, a large body of potentially exculpatory material.  Three days after the August 6 status conference, the government filed the following update in another January 6 case:

Although we are aware that we possess some information that the defense may view as supportive of arguments that law enforcement authorized defendants . . . to enter the restricted grounds, e.g., images of officers hugging or fist-bumping rioters, posing for photos with rioters, and moving bike racks, we are not in a position to state whether we have identified all such information. Pursuant to *Brady* and its progeny, we are required to make available the voluminous data that may contain any similar information for Defendant to review.

Mostofsky's Motion to Compel Production of *Brady* Compilation Evidence, ECF No. 41, p. 2.

---

[2] The D.C. Code requires that MPD officers "issue at least one clearly audible and understandable order to disperse using an amplification system or device, and shall provide the participants [in an assembly] a reasonable and adequate time to disperse and a clear and safe route for dispersal." Code of the District of Columbia, § 5-331.07(e)(1).  That section, and others in the D.C. Code, applies in this case because 18 U.S.C. § 231(a)(3) does not occupy the field. 18 U.S.C. § 233.  Dispersal order requirements found in many common law countries stem from the Riot Act of 1714, an act of Parliament from which the idiomatic phrase "read the riot act" derives.  UK Parliament, 1714 Riot Act, available at: https://www.parliament.uk/about/living-heritage/transformingsociety/electionsvoting/newport-rising/1839-newp-ris/riot-act-1714/.

The government has identified only one MPD dispersal order in the Capitol area in which Mostofsky was present on January 6.  It was announced approximately 30 minutes *after* the barricade incident that is the subject of this case.

Since that time—about a month ago—the government has not made any of these *Brady* materials available to Mostofsky, either collectively or on a rolling basis.

## II. Argument

### A. The government has not satisfied the reconsideration standard

Courts in this district adopt the standard of review for motions for reconsideration filed under Rule 59(e) of the Federal Rules of Civil Procedure as the appropriate standard for motions for reconsideration in criminal cases. *Sunia*, 643 F. Supp. 2d at 60 (citing *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. 2006)). Reconsideration of an interlocutory decision is available "as justice requires," for which standard the relevant considerations include: "'whether the Court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred.'" 643 F. Supp. 2d at 61 (quoting *Isse v. Am. Univ.*, 554 F. Supp. 2d 25, 29 (D.D.C. 2008)).

The government's motion to vacate the trial date and to exclude time under the STA does not even attempt to satisfy the reconsideration standard. It simply repeats the STA arguments made by the government during the August 6 status conference—and in every single January 6 case regardless of the specific facts at issue—which were rejected by the Court. The government again notes that courts grant ends-of-justice STA continuances in complex cases, ones that "involve[e] far less complexity in terms of the volume and nature of data, and far fewer individuals who were entitled to discoverable materials." ECF No. 48, p. 4. This argument fails as the question is whether *this defendant's* case is complex, not whether all of the government's work lumped together may be regarded as collectively complex. 18 U.S.C. § 3161(h)(7)(B)(ii) ("Whether *the case* is so unusual or complex. . . .") (emphasis added). None of the authorities

cited by the government holds that it is appropriate to continuously exclude time under the STA in Defendant A's case because the government must also prosecute Defendants X, Y, and Z, who were not involved in joint criminal activity with Defendant A.  ECF No. 48, pp. 5-6. Mostofsky's federalized trespass matter is not remotely a complex criminal case, factually.

During the August 6 status conference, the Court did not misunderstand the parties, make a decision beyond the issues presented, or fail to consider controlling decisions or data.  The government's motion does not present a controlling or significant change in the law since August 6.  Therefore, the government's STA motion should be denied.  *Sunia*, 643 F. Supp. 2d at 60.

### B.   The government's continuance arguments wrongly assume an open-file production alone will satisfy its *Brady*-related obligations

The government contends that the trial date should be vacated and continued for at least another 60 days so that it can "ensur[e] that all arguably exculpatory materials are produced" to the defense—in the form of massive databases of documents and digital materials, which Mostofsky will have to scour for *Brady* material before trial.  ECF No. 48, p. 1.  This argument should be rejected for several reasons.

First, the government ignores Mostofsky's repeated requests that the government prioritize *case-specific* materials which he has itemized with particularity.  The issue is not the "7,000 hours of footage" from inside the Capitol Building, the "30,000 records from the U.S. Capitol Police," the "750,000 investigative memoranda" in the possession of the FBI, or the 2,300 hours of MPD body-worn camera footage.  United States' Memorandum Regarding Status of Discovery as of August 23, 2021, ECF No. 44.  The problem, rather, is that the government cannot—or will not—produce (to take one example) the complete January 6 body-worn camera footage *merely for the officer witnesses in this case*.  Yet the government's status reports indicate that DOJ *is already in possession of these videos*.  ECF No. 44, p. 8.  Nor will the government

explain when it intends to produce standard Jencks and impeachment materials; when it will decide whether to attempt to use Rule 404(b) material; whether it will stipulate to certain facts to streamline trial; whether it will make officer witnesses, whom it does not intend to call, available for trial; and whether it will produce any other BWC videos or records concerning the MPD's dispersal order on January 6. None of these delays has anything to do with burdens resulting from general January 6 discovery. The government can and should comply with these reasonable discovery obligations well in advance of trial in October or its witnesses should be struck. LCrR 5.1 (g).

Second, the government's argument for a 60-day continuance is premised on the contention that it will be the defense's unique and time-consuming burden to sift through the multiple databases apparently being created by the government to locate case-specific *Brady* material among tens of thousands of documents and media files. ECF No. 48, pp. 3-4. That is wrong. As this Court has recognized many times, "'open-file discovery does not relieve the government of its *Brady* obligations.'" *United States v. Saffarina*, 424 F. Supp. 3d 46, 85(D.D.C. 2020) (quoting *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) (Friedman, J.)); *United States v. Blankenship*, 2015 U.S. Dist. LEXIS 76287, *3 (S.D. W. Va. June 12, 2015) (same); *United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617 (E.D. Cal. Aug. 2, 2010) (same); *United States v. Bornovsky*, 820 F.2d 575, 575 (2d Cir. 1987) ("The government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided. . . .").

In *Hsia*, this Court held that "the government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." 24 F.

Supp. 2d at 29.  The Court ordered the government to identify the *Brady* material of which it was aware.  *Id.*

Similarly, in *Saffarina* the government produced "millions of pages of documents" to the defense but refused to identify any *Brady* material of which it was aware.  424 F. Supp. 3d at 86. This Court ordered the government to identify the *Brady* material of which the government was or should be aware.  424 F. Supp. 3d at 90-91.  The Court based its decision on the fact that the defendant was "an individual defendant who neither has the benefit of parallel civil litigation, nor access to voluntary corporate assistance to sift through the massive amounts of documents within the government's voluminous production." *Id.* at 92.  It was also determinative that defense counsel was representing the defendant *pro bono*.  *Id.*

In *Blankenship*, the government produced "four million pages of discovery." Even though the government provided the defense with a "searchable, indexed, digital database of documents," the district court still ordered the government to "specifically designate any known *Brady* material as such and disclose the same to defense counsel."  2015 U.S. Dist. LEXIS 76287, at *6.

In *Salyer*, the government's massive production consisted of electronic information with multiple gigabytes and millions of pages.  2010 U.S. Dist. LEXIS 77617, *1.  Partly because the defendant had a "small defense team," the district court ordered the government to identify the *Brady/Giglio* material in the production.  *Id.* at *10.

Here, the government has described its impending massive discovery production as plucked from "the largest [investigation] in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence." ECF No. 34, p. 2.  As Mostofsky already noted, the government's latest status report suggests that it will be producing

to Mostofsky millions of pages of documents and thousands of hours of video footage.
Mostofsky does not enjoy the benefit of parallel civil litigation or voluntary corporate assistance.
He has a very small defense team (by headcount).  And although counsel is not representing
Mostofsky *pro bono*, he has not even had the time to submit a CJA voucher yet for his work.

For all those reasons, the government's 60-day continuance argument is not properly
premised on the notion that its *Brady* obligations are discharged by dumping a massive discovery
production on defense counsel who must alone scour it for *Brady* material.  Unlike the defense,
the government has possessed most of those materials since it indicted Mostofsky nearly seven
months ago.  It has an army of agents and lawyers reviewing the materials.  So, the government
must promptly identify any *Brady* materials specific to this case before trial.  *Saffarina*, 424 F.
Supp. 3d at 85; *Hsia*, 24 F. Supp. 2d at 29; *Blankenship*, 2015 U.S. Dist. LEXIS 76287, *3;
*Salyer*, 2010 U.S. Dist. LEXIS 77617, *10.  LCrR 5.1(a) (government must make good faith
efforts to disclose *Brady* material to the defense as soon as reasonably possible after its existence
is known).

    **C.**    **Even if the government cannot complete its discovery obligations by the trial
date, Mostofsky cannot be forced to waive one set of substantial rights to
preserve others**

The Constitution guarantees Mostofsky the right to a speedy trial and the STA requires
the government to try Mostofsky by October 18.[3]  U.S. Const. amend. VI; 18 U.S.C. §

---

[3] Mostofsky has filed a Motion to Dismiss Counts One, Two, Five and Six of the Superseding
Indictment; and two motions to compel the production of materials.  ECF Nos. 40, 41, 47.  While
the STA provides that excludable time includes "delay resulting from any pretrial motion, from
the filing of the motion through the conclusion of the hearing on . . . such motion," §
3161(h)(1)(D), the D.C. Circuit has held that that subsection does not apply to motions "which
can be decided on the papers alone." *United States v. Ntube*, 1996 U.S. Dist. LEXIS 20617, *12
(D.C. Cir. 1996) (citing *Henderson v. United States*, 476 U.S. 321 (1986)).  The latter are
governed by § 3161(h)(1)(H), which excludes "delay reasonably attributable to any period, not to
exceed thirty days, during which any proceeding concerning the defendant is *actually under*

3161(c)(1).  If the government does not, the Superseding Indictment "shall be dismissed on motion of the defendant." § 3162(a)(2).

At the same time, the Constitution also guarantees Mostofsky the right to receive from the government evidence favorable to him that is material to guilt or punishment.  U.S. Const. amend. V; *Brady*, 373 U.S. at 87.  That right is violated when Mostofsky does not receive the favorable evidence in time for trial (at the latest), "irrespective of the good faith or bad faith of the prosecution." *Id.  United States* v. *Agurs*, 427 U.S. 97, 112-113, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976) (defense request unnecessary); *Kyles* v. *Whitley*, 514 U.S. 419, 435, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995) (exculpatory evidence is evidence the suppression of which would "undermine confidence in the verdict"); *Giglio* v. *United States,* 405 U.S. 150, 154, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972) (exculpatory evidence includes "evidence affecting" witness "credibility," where the witness' "reliability" is likely "determinative of guilt or innocence").

The government's motion to vacate the trial date may be read as a concession that it cannot satisfy its *Brady* obligations by October 18.  ECF No. 48, p. 1 (STA tolling request motivated by "government's commitment to ensuring that all arguably exculpatory materials are produced. . . .").  However, that does not mean that Mostofsky may be forced to choose between his constitutional and statutory rights to a speedy trial and his right to receive from the government evidence favorable to him.  A criminal defendant may not be placed in the "intolerable [situation in which] one constitutional right [must] be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968); *United States v. Sheikh*, 493 F.

---

*advisement by the court*" (emphasis added). The Court decides which motions "can be decided on the papers alone." *Ntube*, 1996 U.S. Dist. LEXIS 20617, *14.  Here, it has advised the parties that the Court typically does not hold hearings on criminal-case motions.  Because the Court has not yet taken Mostofsky's motions under advisement, no STA delay is "reasonably attributable" to them to date.

Supp. 3d 883, 890 (E.D. Cal. 2020) (dismissing indictment under STA partly because of government delays in producing *Brady* materials).

Analogous to this situation is the issue of in what contexts a defendant may knowingly and voluntarily waive his right to a fair trial by pleading guilty to an offense absent prior *Brady* disclosures by the government.  In *United States v. Ruiz*, 536 U.S. 622, 633 (2002), the Supreme Court held that the government was not required to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.  However, *Ruiz* was limited to impeachment evidence.  A defendant may "knowingly" and "voluntarily" waive his right to a trial absent that type of evidence because "[i]t is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *Id.* at 630.  The Court contrasted that type of information with evidence "establishing the factual innocence of the defendant," which the plea agreement in that case committed to producing to the defendant, if known by the government.  *Id.* at 625.  The Supreme Court has not considered whether *Ruiz*'s waiver rule applies to exculpatory material and some courts, including in this district, have held that it does not. *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) ("By holding in *Ruiz* that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession."); *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) (noting that "given th[e significant distinction between impeachment information and exculpatory evidence of actual

innocence], it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea");*United States v. Nelson*, 979 F. Supp. 2d 123,135-36 (D.D.C. 2013) ("Because the prosecution suppressed exculpatory evidence before Nelson pled guilty, Nelson's due process rights were violated to his prejudice and his guilty plea was not voluntary and knowing.").

So too in the situation where a defendant is forced either to waive his right to a speedy trial or to waive his right to as-yet-unknown potentially exculpatory *Brady* material. If the voluminous evidence the government seeks 60 days to produce contains exculpatory information in this case, due process requires that the government promptly advise Mostofsky of that fact (if it is known or it reasonably should be known) and whether it can be produced before the current trial date and if so when. Conversely, if the unproduced evidence does not contain exculpatory information in Mostofsky's case, Mostofsky must be made aware of that fact, so that he can "knowingly" and "voluntarily" decide whether to waive his speedy trial rights. See *Godinez v. Moran*, 509 U.S. 389, 400 (1993) (waiver of constitutional rights must be made knowingly and voluntarily).

It must be kept in mind that responsibility for the constitutional trade-off posed by the government lies with it far more than with Mostofsky. Mostofsky is not accused of encouraging anyone else to protest at the Capitol on January 6. He is not responsible in any way for the number of protesters there. Nor did Mostofsky compel the government to indict over 600 defendants at the same time, a number that will apparently breach 1,000 before the government is done. Despite enjoying a five-year statute of limitations period, the government elected to

overwhelm the court system with defendants by charging them all at once—and all in federal court.  Many of the protesters committed crimes that traditionally belong in the federal system (such as assaults on federal law enforcement at the Capitol or destruction of federal property), but dozens to hundreds of them committed alleged protest-related offenses that the government has historically handled through the "post-and-forfeiture" procedure in D.C., where an arrestee pays a fine and is dismissed.  The January 6 docket bottleneck is a policy choice, not some inevitability out of the government's hands, like the intrinsic factual complexity of a crime in a particular case.  That choice's trade-offs are *the government*'s, not Mostofsky's.

The government implies it cannot satisfy its *Brady* and other discovery obligations until after the trial date, the seventieth day from Mostofsky's arraignment, not including STA excludable time.  If so, the correct response is not to compel Mostofsky to waive one of his constitutional rights.  Instead, the government may move the Court to continue the trial date without excluding time under the STA.  After the 70-day mark, the STA will require the Court to dismiss the Superseding Indictment.  § 3162(a)(2).  The government may then make its arguments as to why the indictment should not be dismissed with prejudice.  *Id.*

Dated: September 6, 2021                              Respectfully submitted,


                                                     /s/ David B. Smith
                                                     David B. Smith, D.C. Bar No. 403068
                                                     David B. Smith, PLLC
                                                     108 North Alfred Street, 1st FL
                                                     Alexandria, Virginia 22314
                                                     (703) 548-8911 / Fax (703) 548-8935
                                                     dbs@davidbsmithpllc.com


                                                     Nicholas D. Smith, D.C. Bar No. 1029802
                                                     David B. Smith, PLLC
                                                     7 East 20th Street, Suite 4R
                                                     New York, NY 10003

(917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Mostofsky*

## Certificate of Service

I hereby certify that on the 6th day of September, 2021, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>     Graciela Lindberg
>     Assistant United States Attorney
>     555 4th Street, N.W.
>     Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>     /s/ David B. Smith
>     David B. Smith, VA Bar No. 25930
>     David B. Smith, PLLC
>     108 North Alfred Street, 1st FL
>     Alexandria, Virginia 22314
>     (703) 548-8911 / Fax (703) 548-8935
>     dbs@davidbsmithpllc.com