UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-138 (JEB) |
| | : | |
| AARON MOSTOFSKY, | : | |
| | : | |
| Defendant | : | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO VACATE TRIAL DATE AND CONTINUE TRIAL AND
TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The defendant, Aaron Mostofsky, opposes the government's "Motion to Vacate Trial Date and Continue Trial, and to Exclude Time Under the Speedy Trial Act," ECF48 ("Motion"). His arguments are unconvincing.

### A.  This Court Should Reconsider and Vacate Its Order Scheduling Trial to Begin on October 18, 2021.

In his opposition, ECF50, the defendant claims the Motion should be treated as one for reconsideration of this Court's August 6 Order, denying the government's oral request to continue the trial date and setting October 18, 2021 for the commencement of trial. ECF50 at 5-6. He claims the Motion fails to meet the requirements for reconsideration, because "the Court did not misunderstand the parties, make a decision beyond the issues presented, or fail to consider controlling decisions or data." ECF50 at 6.

But reconsideration can be warranted—and is in this case—in light of the new information the government has cited to the Court regarding its extensive discovery activities since August 6. *See United States v. Libby*, 429 F. Supp. 2d 46, 46–47 (D.D.C. 2006) (granting government's motion for clarification and reconsideration; "To prevail on [a motion for reconsideration] … the movant must demonstrate [*inter alia*] … new evidence"), citing *United*

*States v. Yakou*, 2004 WL 884545, at *2 (D.D.C. Apr. 9, 2004) and Federal Rule of Civil Procedure 59(e).

At the August 6, 2021 status conference, the government provided the Court with an oral "status update" regarding its very substantial discovery activities in the Capitol Breach cases to that point. The government has since filed in this case its Memorandum Regarding Status of Discovery as Of August 23, 2021, ECF44. There, the government explained in detail for the first time how it was creating a Relativity database containing all information it intended to disclose to all Capitol Breach defendants. *Id*. at 3-5. It explained the progress it had made to that time, including the ingestion of 30,000 records from the U.S. Capitol Police, and noting that it intended to ingest and review approximately 750,000 investigative memoranda and attachments in the FBI files associated with the Capitol Breach, "using all of Relativity's tools to organize, deduplicate and produce these materials as appropriate and to do so as quickly as possible." *Id*. at 6. The government also explained why this process is very time and resource consuming:

> Before the hundreds of thousands of investigative files at issue here are ever loaded to Relativity, they must be meaningfully organized into folder structures that will make sense to reviewers and recipients. The materials must also be quality-checked, *e.g.*, we must ensure that we have the password for protected documents, that the documents were provided in a format that will open, and that we remove irrelevant software and system files that would only cloud the workspace and confuse reviewers. After materials are loaded to Relativity, we must customize the manner in which they are displayed so as to be meaningful to reviewers who will make discoverability determinations and apply appropriate redactions and sensitivity designations.

*Id*. at 5-6.[1]

---

[1] The government is actively engaged in furthering its discovery efforts. This week, we will produce U.S. Capitol Police reports related to allegations of misconduct by law enforcement in connection with the events of January 6, 2021. Shortly thereafter, we will produce Metropolitan Police Department use-of-force investigation files.

As the government further explained, it had already migrated over 2,900 body-worn-camera videos totaling over 2,300 hours (nearly 100 days) into its instance of evidence.com and expected to be able to share that footage with FPD's instance within approximately the next two weeks. The government further explained that when it produced body-worn-camera video, it would also share work product that would facilitate efficient defense review of body-worn-camera footage, including a spreadsheet that identifies footage by agency, officer, video start time, a summary of events, and location of the camera in 15-minute increments.[2]  *Id*. at 8. The government indicated it would continue to ingest video evidence into evidence.com on a rolling basis, and to produce it regularly.

The updated August 23 Status of Discovery Memorandum provided the Court with a far more comprehensive explanation of the vast scope and challenges of the government's discovery obligations and the steps it was taking to meet those challenges than the Court had when it fixed the October 18 trial date. The Court should exercise its broad discretion, *see United States v. Abney*, 812 F.3d 1079, 1086 (D.C. Cir. 2016), to reconsider its prior order and grant the government's requested continuance.

  **B.**  **Failure to Grant a Continuance Will Render Impossible the Government's Obligation to Disclose All Possible *Brady* Material[3] in its Possession.**

The Due Process clause requires the government to disclose materially exculpatory

---

[2] We are now technologically ready to share body-worn-camera footage from our instance to the defense instance and are finalizing the logistics of doing so.  Further, as of September 7, 2021, our vendor has received the majority of U.S. Capitol Police surveillance footage, and we are in the process of creating tags to organize the footage to facilitate its review by defendants, *e.g.*, identifying cameras by location.

[3] *See Brady v. Maryland*, 373 U.S. 83 (1963).

information in its possession to the defense in time for its effective use at trial, regardless of whether the government is aware of its exculpatory value. *E.g., United States v. Risha*, 445 F.3d 298, 306 (3d Cir. 2006). The government has represented that, notwithstanding the devotion of substantial resources to the task, completing its discovery obligations, including turning over to the defendant all potential *Brady* material in its possession by the current trial date is, as a practical matter, impossible. ECF44 at 6-9. The defendant recognizes as much. ECF50 at 10. Forcing a trial on October 18 would well risk that *Brady* information would not be turned over to the defense until after the trial, thus provoking post-trial litigation and possibly the need for a retrial.

The defendant contends that a continuance of the Speedy Trial Act ("STA") trial deadline is unwarranted even though the government will be unable to complete its collection, review, indexing, and production of the massive amount of discoverable material by the current trial date and even though he is not "waiving" his rights to complete discovery. ECF50 at 9, 12. His opposition is a naked attempt to place the government in a double-bind: he demands discoverable information that (he acknowledges) cannot be produced by the current trial date, yet insists that a continuance allowing the government to fulfill its disclosure obligations is unwarranted.  He cannot have it both ways.

The defendant further contends resolution of the continuance request should turn narrowly on "whether this defendant's case is complex, not whether all of the government's work lumped together may be regarded as collectively complex," ECF50 at 5. *See also id*. at 6 (his case is not "factually" complex).  He cites the "complex case" provision of the STA, 18 U.S.C § 3161(h)(7)(B)(ii), *id*. at 5, but ignores 18 U.S.C § 3161(h)(7)(B)(iv) (providing for an ends-of-justice continuance "in a case which, taken as a whole, is not so unusual or so complex

4

as to fall within clause (ii)" when the failure to do so "would . . . deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."). As the defendant does not deny, fulfillment of the government's disclosure obligations in this and all the related Capitol Breach cases is exceedingly time and resource consuming. The government has sought a continuance precisely because of the complexity and enormity of the government's disclosure obligations. The defendant's focus on the factual simplicity of his conduct is beside the point.

The defendant overlooks how production of discovery in the Capitol Breach cases presents challenges that arise from his participation in a massive criminal event, in which each defendant's case is bound by interrelated facts and shared evidence related to the collective efforts of the mob. The defendant joined with thousands of other persons to collectively, if not concertedly, commit several federal crimes by storming the United States Capitol to disrupt the Congressional certification of the Electoral College vote. These events were captured by the U.S. Capitol Police's extensive close circuit camera system, body-worn cameras of responding law enforcement, and news agencies that captured the riot as it unfolded. In addition, the rioters created their own enormous digital footprint on January 6 when they recorded themselves and each other on their mobile telephones and cameras and described their conduct through copious digital communications and social media posts. The rioters collectively generated thousands of hours of digital evidence, creating disclosure obligations far in excess of even the most extensive, complicated, and protracted white-collar crimes.

The defendant faults the government for devoting its resources to organizing the totality of the investigative materials in a manner to make them available to all Capitol Breach defendants in the shortest period of time. Instead, he says, the government should be acceding to

5

his "repeated requests that the government prioritize case-specific materials which he has itemized with particularity." ECF50 at 6. He ignores that the government has "prioritized" his case-specific materials. *See* Motion at 2. While claiming at one point in his Opposition that he is seeking only a limited amount of "case-specific" material, the defendant later asserts he is entitled to—and will not waive his rights to the production of—any and all *Brady* material the government possesses but has not yet reviewed. ECF50 at 9-10.

The defendant contends he cannot be "forced either to waive his right to a speedy trial or to waive his right to as-yet-unknown potentially exculpatory *Brady* material." Opposition at 12. Be that as it may, the defendant is not entitled to be tried within the current time frame given his insistence that the government will remain on the hook for any *Brady* material it possesses but has not been able to process, review, or produce. As required by the STA, this Court should strike the balance between the parties' and the public's right to the prompt disposition of criminal cases and the need to extend the STA deadline to ensure that justice is done. It can and should do so by granting the requested continuance.

> C. **The Government has Devoted Substantial Resources to Make All Potential *Brady* and Rule 16 Information Readily Accessible to the Capitol Insurrection Defendants: It Will Not Engage in a Document Dump.**

The defendant suggests the government may execute a "document dump," which is insufficient to meet its disclosure obligations under *Brady*. Opposition at 6. That is incorrect. the defendant neglects to mention in his summary of "the parties' discovery progress to date," Opposition at 1-5, that the government has already provided substantial "case specific" discovery to the defense. Motion at 2.[4]

---

[4] The defendant complains that the government has not promptly responded to his barrage of emailed interrogatories. Opposition at 3-4. He declines to explain why he is entitled to much of

The defendant contends the government must identify with particularity all of the disclosed information it regards as *Brady* material, further delaying the government's fulfillment of its disclosure obligations, while simultaneously urging the Court to stick to the current trial date. Opposition at 6-9. But *Brady* commands that the government may not "suppress" materially exculpatory information. 373 U.S. at 87. Once it produces that information to the defense, the information is no longer suppressed. The process described above allows the

---

the information he requests. *See generally United States v. Phillips*, 580 F. Supp. 517, 520 (N.D. Ill. 1984) (ordering defendant "to cease taking or receiving further discovery in [a] state court case" which was intended to circumvent the limited discovery available to defendants in a federal criminal case); *United States v. Richardson*, 607 F.3d 357, 368-69 (4th Cir. 2010) (noting the "limited discovery otherwise permitted in criminal cases").

That said, the government:

- represents, as it stated in its email to defense counsel on August 8, it will not seek to introduce evidence of uncharged acts that is admissible only pursuant to Federal Rule of Evidence 404(b). *See* Opposition at 6;

- stands ready to enter into a stipulation of facts based on an agreement regarding the authenticity of the government's digital and other evidence. *Id*. at 7;

- has produced some FBI summary reports of interviews of three identified police officers whose body-worn-camera ("BWC") footage shows the incident during which the defendant pushed against and obstructed officers on the Capitol grounds. The government has also produced BWC video footage relevant to that incident. The government intends to interview those officers again and expects to provide any reports generated from those interviews. *Id*. at 7;

- will ensure the availability at trial of any officers requested by the defendant. *Id*.;

- has already disclosed "dispersal order" footage, and while it will not identify the BWC footage of every police officer present at the Capitol that memorializes the giving of a dispersal order, it will make available all BWC footage so that the defendant may search it for evidence he deems relevant. *Id*.;

- will not stipulate to any of the contents of a Senate Report regarding the Capitol Breach. *Id*. at 3; and

- will produce a witness and exhibit list when required by the Court.

government to identify and produce any *Brady* information, thereby avoiding any suppression. That process is all the more important because the defense has no obligation to disclose its strategy or theories before trial, so the government cannot know what information in its possession will support that strategy and theories, *i.e.*, what information is "exculpatory." For that reason and others, the majority view is that, although the government is required to disclose *Brady* material, it is not required to identify what portions of the disclosed information is materially exculpatory. *See* discussion and cases cited in our Motion at 3-4.

The cases on which the defendant relies are neither controlling nor apposite. In those cases, the government had not charged the defendants until after completing years-long investigations, during which it had collected and categorized voluminous relevant information. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 88 (D.D.C. 2020) ("the government … has had the luxury of reviewing this material on a rolling basis over the course of its three-year investigation"); *United States v. Blankenship*, 2015 WL 3687864, at *5 (S.D.W. Va. June 12, 2015) (government "had several years to review the documents"); *United States v. Salyer*, 2010 WL 3036444, *4 (E.D. Cal. Aug. 2, 2010) ("[d]uring the course of the years long investigation ... the government personnel seemed to be able to segregate that evidence which would be useful in the prosecution in terms of guilt, but apparently made no efforts to segregate that evidence which runs counter to the charges.").

The opposite is true here. The government charged the defendant by complaint five days after the Capitol Breach. Now, nine months later, by devoting substantial resources to the investigation of that event, the government, has not only collected at least 250 terabytes of relevant information but is making substantial progress organizing it in a manner to be readily accessible and useful to the defense. ECF44 at 1-9. Nevertheless, the government has not and

8

cannot complete that task by the current trial date. This Court should grant the requested continuance to accommodate that reality.

### D. The defendant's Self-Serving Complaints About the Government's Litigation Strategy is no Basis to Put the Government in a Double-Bind.

The defendant contends that, in order to ease its current discovery obligations, the government should have charged in federal court only a few persons who assaulted police on January 6 and issued citations to the rest, such as himself. ECF50 at 12-13. That would have served the rioters well but not the public interest or the rule of law.

But the risks in such an approach are obvious. Some of the rioters may have continued to pose a danger to the public if not prosecuted swiftly.  Had the government waited months or years to charge defendants following an obviously overt investigation, many of the targets would have deleted vital evidence on their digital devices and social media accounts. Indeed, much of that evidence destruction has almost certainly occurred already.

### Conclusion

For those reasons and those set forth in the Motion, the government respectfully requests that this Court vacate the trial currently set for October 18, 2021, grant a 60-day continuance of the above-captioned proceeding, exclude the time within which a trial must commence under the STA on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial, and set a status hearing to monitor the government's progress in meeting its discovery obligations.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

9

| | | | |
|---|---|---|---|
| By: | /s/ *Emily A. Miller* <br> EMILY A. MILLER <br> Capitol Breach Discovery Coordinator <br> DC Bar No. 462077 <br> 555 Fourth Street, N.W., Room 5826 <br> Washington, DC 20530 <br> Emily.Miller2@usdoj.gov <br> (202) 252-6988 | By: | /s/ *Graciela R. Lindberg* <br> Graciela R. Lindberg <br> Assistant United States Attorney <br> Bar No. TX 00797963 <br> 11204 McPherson Road <br> Suite 100A <br> Laredo, TX 78045 <br> graciela.linberg@usdoj.gov <br> (956) 721-4960 |